**Opinion issued April 18, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01019-CR

————————————

**TRACY BLAINE FRANCIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1282094**

---

# O P I N I O N

A jury convicted Tracy Blaine Francis of the felony offense of aggravated robbery and, finding one enhancement paragraph true, sentenced him to seventy-five years' confinement. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). In five

issues on appeal, Francis contends that (1) the trial court erred with respect to the admission of certain evidence during the guilt and punishment phases of trial, (2) a mistrial was required, and (3) the evidence was legally insufficient to sustain his conviction. We affirm the trial court's judgment.

**Background**

A grand jury indicted Francis for the felony offense of aggravated robbery, alleging that Francis "unlawfully, while in the course of committing theft of property owned by DEBORAH THOMAS, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY threaten[ed] and place[d] DEBORAH THOMAS in fear of imminent bodily injury and death, and [Francis] did then and there use and exhibit a deadly weapon, namely, A KNIFE."

After a jury was selected but before any testimony was presented, defense counsel had an opportunity to view the State's physical evidence. He observed a machete among the State's exhibits. Defense counsel objected that he was unaware of the machete's existence and that it was not produced by the State in compliance with the trial court's discovery order, which directed the State "to furnish the items ordered for inspection and copying on or before ten (10) days prior to trial." Those items included, among other things, "all physical objects to be introduced as part of the State's case" and "all contraband, weapons, implements of criminal activity seized or acquired by the State or its agents in the investigation of the alleged

2

offense." The trial court recessed the trial to allow defense counsel to inspect the machete and to discuss it with Francis, but the trial court ultimately permitted Deborah Thomas, the complainant in this case, to testify regarding its use during the commission of the aggravated robbery.

During the guilt phase of trial, Thomas testified that she lived with Francis at the time of the robbery. When Thomas came home on the day of the robbery, she noticed that Francis, who had a history of drug abuse, was visibly upset. She described Francis as being "edgy" and "lit up like a Christmas tree." As Thomas went into her bedroom to go to sleep, Francis walked into the room behind her and struck her with his fists twice on the back of her head. Francis threw Thomas onto the bed, climbed on top of her, and repeatedly struck her in the face with his fists. According to Thomas, she lost and regained consciousness several times as Francis beat her.

With respect to the machete, Thomas testified that she kept it, along with a pocketknife, in her bedroom for safety reasons. Francis placed both knives on the bed next to Thomas. Thomas stated that Francis picked up the machete and told her that he would "cut [her] up into a thousand pieces and no one would ever, ever find [her] body." Francis also threatened Thomas with the pocketknife by sliding it down her body from her neck to her vagina, telling her that he could cause her harm. Francis eventually left Thomas alone after reaching into her brassiere and

3

removing $1,000. After the robbery, Thomas walked to a neighbor's house and called the police. Thomas testified that she feared for her life during the incident and that, as a result of the beating she endured from Francis, she suffered severe swelling in her face, injuries to her hand and leg, and the loss of four teeth.

The State also presented testimony from a family violence counselor who met with Thomas after the incident and two law enforcement officers, one of whom responded to Thomas's call for police assistance and the other who investigated the incident. Officer C. Porter, the investigating officer from HPD's family violence unit, was asked whether he found Thomas credible. He responded, "Yes, and looking at the criminal history of the defendant . . . ." Francis objected to Porter's testimony, on the ground that it constituted inadmissible extraneous offense evidence, and moved for a mistrial. The trial court instructed the jury to disregard Porter's statement, but denied a mistrial. During cross-examination of Thomas, defense counsel elicited testimony that Thomas had not mentioned Francis's use of knives during the robbery to any of the State's other witnesses.

After the close of evidence and the presentation of closing arguments, the jury found Francis guilty of aggravated robbery. Before the punishment phase of trial began, Francis pleaded true to one enhancement paragraph alleging a prior conviction for murder. During punishment, the State introduced evidence of Francis's full criminal history, including the murder conviction and other

convictions for evading arrest, driving with a suspended license, and possession of less than one gram of cocaine.

The State also recalled Thomas as a punishment witness, at which time she gave further testimony regarding the reasons Francis was upset on the day of the robbery. She explained that Francis was upset because his car had been towed from their apartment complex. Francis told Thomas that he had threatened to kill the employees working in the apartment management office if his car was not returned. After Francis spoke with the employees in the apartment management office, Thomas saw Francis retrieve the machete from her bedroom and begin to sharpen it.

Thomas further testified that while Francis was in custody awaiting trial on the aggravated robbery charge, he threatened her over the telephone. Thomas testified that Francis told her that if he was convicted, two people would die. Thomas took this to be a threat against her life.

Francis objected to Thomas's testimony regarding the threatening phone call on the ground that the State had produced "voluminous" audio-recordings of all of the calls Francis made from jail on three days before trial. Francis alleged that the State's belated production of the recordings constituted unreasonable notice of its intent to use the threatening phone call as extraneous offense evidence during punishment. In response to Francis's objection, the prosecutor stated that she did

not produce the recordings until shortly before trial because she had not heard the recordings until then. That is, she produced the recordings to defense counsel on the same day she heard them. The prosecutor further stated that she informed defense counsel that the phone call about which she intended to introduce evidence was one of the first phone calls on the recordings, occurring within the first twenty minutes of the tapes. The trial court overruled Francis's objection and permitted Thomas's testimony.

At the close of all the punishment evidence, the jury returned a sentence of seventy-five years' confinement. Francis appeals.

## Admissibility of Evidence

Three of Francis's issues on appeal concern the trial court's rulings on the admissibility of evidence. Francis's first and second issues challenge the admission of the machete during the guilt phase of trial. His third issue relates to evidence admitted during the punishment phase of trial, namely the evidence of the threatening phone call he made to Thomas while in custody awaiting trial.

## A.    Standard of review

We review the trial court's evidentiary rulings for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). Unless the trial judge's decision was outside the "zone of reasonable disagreement," we will

6

uphold the ruling. *Oprean*, 201 S.W.3d at 726; *Walker*, 321 S.W.3d at 22. When a trial judge makes findings of fact "based on an evaluation of credibility and demeanor," we defer to those findings. *Oprean*, 201 S.W.3d at 726; *Walker*, 321 S.W.3d at 22. If the trial judge does not enter written or oral findings of fact, we "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Walker*, 321 S.W.3d at 22.

## B. Admissibility of machete during guilt phase of trial

In his first and second issues, Francis argues that the trial court erred by admitting the machete into evidence during the guilt phase of trial because the State willfully withheld the machete's existence in violation of the trial court's discovery order and failed to give notice under Rule of Evidence 404(b).[1] The State defends the trial court's admissibility ruling on the grounds that (1) the record does not show a willful violation of the discovery order; (2) the trial court cured any harm resulting from the violation by granting Francis a recess for the purpose of inspecting the machete and preparing for cross-examination, after which Francis

---

[1] *See* TEX. R. EVID. 404(b) (providing that "evidence of other crimes, wrongs or acts" may be admissible for purposes other than to "prove the character of a person in order to show action in conformity therewith" only if, "upon timely request by an accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction").

7

did not request additional time to examine the machete or prepare; and (3) the machete was used in the commission of the charged offense and was therefore not inadmissible extraneous offense evidence.

### 1. Discovery order violation

The trial judge signed a pretrial order requiring that, at least ten days before trial, the State give defense counsel "all physical objects to be introduced as part of the State's case" and "all contraband, weapons, implements of criminal activity seized or acquired by the State or its agents in the investigation of the alleged offense" for inspection and copying. The State does not dispute that it failed to disclose the machete's existence until after the jury was sworn but before the presentation of any evidence. The trial court admitted the machete into evidence over Francis's objection that the State's violation of the discovery order made the machete inadmissible. The other weapon used during the robbery—the pocketknife—was not recovered by police or presented as evidence at trial.

When the trial court admits evidence offered by the State that was not produced in compliance with a discovery order, the relevant inquiry is whether the prosecutor acted with specific intent to willfully disobey the discovery order by failing to turn over the evidence. *Oprean*, 201 S.W.3d at 726; *see Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978) ("[E]vidence willfully withheld from disclosure under a discovery order should be excluded from

8

evidence."). A prosecutor's actions may be extremely negligent or even reckless, but her conduct must rise to the level of willfulness to require exclusion of the evidence. *See State v. LaRue*, 152 S.W.3d 95, 97 (Tex. Crim. App. 2004).

Whether the prosecutor intended to willfully disobey the discovery order may be inferred from the prosecutor's actions and words. *See Oprean*, 201 S.W.3d at 728. "[W]e consider whether the record indicates that (1) the prosecutor intended to harm the defense, (2) the prosecutor's actions were a strategic and purposeful effort to thwart the defense's preparation of its case, or (3) the prosecutor consciously decided to violate the plain directive of the discovery order." *Walker*, 321 S.W.3d at 22; *see Oprean*, 201 S.W.3d at 727−28. We also consider the validity of the prosecutor's rationale and explanation for violating the discovery order, as well as whether the prosecutor suddenly discovered the evidence such that compliance with the terms of the discovery order was impossible. *Oprean*, 201 S.W.3d at 727−28.

As evidence of willfulness in this case, Francis points to the following circumstances: (1) the machete was not mentioned in any discovery, including the offense report, witness statements, or Thomas's medical records related to the robbery; (2) the machete's existence came to light only after defense counsel observed the machete among the State's exhibits at trial, not as a result of any voluntary act by the prosecutor; (3) the prosecutor had possession of the machete

9

for one month before trial; and (4) the State failed to disclose other evidence—the threatening telephone calls Francis made to Thomas while in custody—in violation of the discovery order. Francis argues that these circumstances are akin to the circumstances in *Oprean*, which the Court of Criminal Appeals determined required the exclusion of evidence. *Id.* at 727.

In *Oprean*, the Court of Criminal Appeals considered whether the prosecutor acted with the specific intent to willfully disobey a discovery order when she failed to produce a videotape of the defendant's prior DWI conviction. *Id.* After examining the prosecutor's actions and statements, the Court found two things "particularly unacceptable." *Id.* First, the Court observed that on the night before the punishment phase began, the prosecutor, who had signed the original discovery order and thus knew its requirements, made an affirmative statement to defense counsel that she intended to introduce only the judgments and sentences from the defendant's prior DWI convictions. *Id.* Yet, the next morning, she introduced a video recording of one of the DWI offenses. *Id.* Second, the Court found that the prosecutor's explanation for not producing the videotape—there was no article 37.07 charge in the discovery order—was meritless. *Id.* at 728. Because the prosecutor knew about the discovery order and attempted to circumvent its requirements, she made a conscious decision to violate the order's plain directive. *Id.* Concluding that the prosecutor's conduct was a "calculated effort to frustrate

10

the defense," the Court held the trial court had abused its discretion by allowing the videotape into evidence. *Id.*

We find *Oprean* distinguishable from the instant case. Having taken possession of the machete from Thomas one month before trial, the State undoubtedly should have produced the machete in a more timely fashion. The record, however, does not support a finding that the prosecutor intentionally disobeyed the discovery order or acted strategically to harm the defense. Unlike the prosecutor who had possession of the challenged evidence in *Oprean*, the prosecutor here had been involved in the case only for a short period of time. Also unlike the prosecutor in *Oprean*, she did not intentionally mislead defense counsel about the evidence or its anticipated use during trial. Once she realized that the machete had not been disclosed to the defense before trial, the prosecutor provided the defense with all of the information she had regarding the machete and its alleged use during the robbery. The prosecutor explained that she had seen the machete referenced in the prior prosecutor's notes, and, although she acknowledged that those notes could have been privileged work product not subject to the defense's review, she incorrectly assumed the defense knew about the machete and thus did not produce the machete when she took possession of it before trial.

Although these statements may demonstrate negligence, the trial court could reasonably conclude that the prosecutor's statements did not establish that she intended to circumvent the trial court's discovery order or thwart the defense by her omission. *LaRue*, 152 S.W.3d at 97 (concluding that although inaction of prosecutor was "'willful' . . . with respect to the conduct itself," there was "no evidence in the record that, by his choice, he intended to violate the order or harm the defense"). We are required to "view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling." *Ross*, 32 S.W.3d at 855; *Walker*, 321 S.W.3d at 22. Because the trial court could reasonably conclude from the prosecutor's statements that the State did not willfully withhold the machete in violation of the discovery order, we hold that the trial court did not err in admitting the machete into evidence over Francis's objection to the discovery order violation.

We overrule Francis's first issue.

### 2. Extraneous offense evidence

Before trial, Francis requested notice under rule 404(b) of the State's intention to use evidence of extraneous offenses at trial. The notice given by the State in response to Francis's request did not include notice of the State's intention to offer evidence that a machete was used during the commission of the robbery. Regarding any use of a knife by Francis, the State's notice stated only that, "on the

12

same day as this offense [the robbery], [Francis] threatened multiple people who worked in the leasing office with a knife." Francis argues in his second issue that the evidence of the machete's use during the robbery constituted extraneous offense evidence because (1) section 46.02 of the Penal Code makes it a crime for a person to intentionally, knowingly, or recklessly carry an illegal knife on his person; (2) the Penal Code defines an "illegal knife" as a "knife with a blade over five and one-half inches"; and (3) the machete blade was longer than five and one-half inches. TEX. PENAL CODE ANN. §§ 46.01(6)(A), 46.02(a) (West 2011). Francis asserts that, because the State did not give timely notice of its intent to offer evidence of his use of the machete during the robbery, the trial court should have excluded the machete.

Evidence of extraneous offenses is not admissible at the guilt phase of trial to prove that a defendant committed the charged offense in conformity with a bad character. *See* TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Extraneous offense evidence may be admissible, however, when it has relevance apart from character conformity.

Rule of Evidence 404(b) conditions the admissibility of extraneous offense evidence on the State's compliance with the rule's notice provision. *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005); *see* TEX. R. EVID. 404(b). The notice provision provides, in relevant part, that extraneous offense evidence may

13

be admissible for limited, non-character conformity purposes provided that, "upon a timely request" by the defendant, the State gives the defendant reasonable notice in advance of trial of its intent to use the evidence during its case-in-chief. *See* TEX. R. EVID. 404(b). Because rule 404(b)'s notice requirement is a rule of evidence admissibility, it is error to admit extraneous offense evidence when the State has not complied with the notice provision of Rule 404(b). *Hernandez*, 176 S.W.3d at 824.

Francis's complaint here is not that the machete evidence was unreliable, irrelevant, or otherwise substantively inadmissible; his complaint is that the machete was improperly admitted because of the State's failure to provide rule 404(b) notice. Accordingly, we begin our analysis by considering whether the State was required to provide rule 404(b) notice because, as Francis contends, the use of the machete during the robbery constituted an extraneous offense.

Section 46.02 of the Penal Code criminalizes the carrying of certain types of weapons outside of certain designated places. TEX. PENAL CODE ANN. § 46.02. Pertinent here, subsection (a) provides that "[a] person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun, illegal knife, or club if the person is not . . . on the person's own premises or premises under the person's control." *Id.* § 46.02(a). "Premises" includes "real property . . . that is being used as living quarters, regardless of

14

whether that use is temporary or permanent." *Id.* § 46.02(a-2). A knife with a blade "over five and one-half inches" is an "illegal knife." *Id.* § 46.01(6)(A).

We construe the Penal Code according to the plain meaning of its terms unless the terms are ambiguous or the plain meaning leads to absurd results. *See Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). A plain reading of section 46.02, subsection (a) establishes that whether Francis committed an extraneous offense by carrying the machete—a knife with a blade exceeding five and one-half inches—on his person depends on where Francis was at the time he carried the weapon. The evidence presented at trial established that the robbery occurred in Thomas's apartment and that Francis was living with Thomas in the apartment at the time of the robbery. The apartment is a "premises" under section 46.02, and Francis did not commit on offense under section 46.02 because he was on his "own premises or premises under [his] control." *See* TEX. PENAL CODE ANN. §§ 46.02(a)(1), (a-2). The record therefore does not establish that the evidence of the machete's use during the robbery constitutes extraneous offense evidence of which the State was required to provide notice under rule 404(b); rather, the machete evidence was evidence of the offense of aggravated robbery.

Even assuming for the sake of argument that the trial court erred by admitting the machete evidence, Francis must still prove harm. *See* TEX. R. APP. P. 44.2(b) (requiring appellate court to disregard any error "that does not affect

15

substantial rights"). No constitutional error is involved when evidence of extraneous offenses are admitted without notice; consequently, we must disregard any error that did not affect Francis's substantial rights. *See Hernandez*, 176 S.W.3d at 824−26.

The rule 404(b) notice requirement serves to prevent surprise to the defendant and to apprise him of the offenses the State plans to introduce at trial. *Hernandez*, 176 S.W.3d at 823. Recognizing this purpose, the Court of Criminal Appeals has approved the reasoning of the Austin Court of Appeals regarding the application of the harm standard in rule 404(b) notice cases:

> [W]e must assess harm from the violation of [a notice provision similar to Rule 404(b)'s] against its intended purpose. Although the violation of the notice provision resulted in the improper admission of evidence, we cannot employ the harm analysis used for violations of the rules of evidence concerning relevancy because the purpose of those rules differs from the purpose of the [Rule 404(b) notice provision]. The rules of evidence governing relevancy limit the use of evidence that may be unfairly prejudicial or misleading; for instance, evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person to show that the commission of the crime at issue is consistent with the defendant's character, but is admissible for other purposes. When evidence of an extraneous offense is admitted to prove such character conformity, we examine the record to determine how the admission of this substantively inadmissible evidence affected the jury's verdict. That test is appropriate because the erroneous admission of the evidence thwarts the rule's purpose of shielding the jury from evidence used for improper reasons. The notice requirement found in [the Rule 404(b)], however, does not relate to the substantive admissibility of the evidence. The lack of notice does not render the evidence inherently unreliable, but instead raises a question about the effect of procedural noncompliance. The purpose of the notice requirement is to enable the defendant to prepare

16

> to meet the extraneous offense evidence. Thus, we must analyze how the deficiency of the notice affected [the defendant's] ability to prepare for the evidence.

*Hernandez*, 176 S.W.3d at 824−25 (quoting *Roethel v. State*, 80 S.W.3d 276, 281−82 (Tex. App.—Austin 2002, no pet.) (citations omitted)). Thus, because Francis did not object to the admissibility of the machete itself, we look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on his ability to mount an adequate defense. *See McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

The State does not dispute that the machete evidence was not disclosed to Francis until the day of trial and that he may have been surprised to learn of its existence. Francis argues the machete evidence "eviscerated [his] defensive theory that since no knife was recovered, and that since no physical evidence of a knife would be presented at trial, there would be insufficient evidence to convict him." But we cannot conclude that the admission of the machete evidence had an injurious effect in this case.

The indictment alleged that Francis used and exhibited a deadly weapon—"namely, A KNIFE"—in the commission of the robbery. Thus, Francis was aware that the State would offer some evidence that he used a knife even if there was no physical evidence. Thomas's testimony was the only testimony regarding the machete. Thomas did not testify until the second day of trial. Defense

17

counsel became aware of the machete on the first day of trial, and no other evidence of the machete was offered in the time between when defense counsel became aware of its existence and when Thomas testified regarding its use. Thus, defense counsel knew of the machete's existence for one day before evidence of it was introduced at trial. And, Francis does not argue that he was unprepared to cross-examine Thomas regarding Francis's use of a knife as alleged in the indictment. When the State disclosed the machete's existed, the State informed defense counsel of all the testimony it anticipated that Thomas would give regarding the machete.

Moreover, Francis did not file his written motion for a continuance until the second day of trial. The trial court recessed the trial so that defense counsel could inspect the machete and discuss it with Francis before the State presented it to the jury. When the trial court inquired whether defense counsel had "plenty of time to look at [the machete], examine it and talk to [his] client about it and prepare for cross-examination or whatever may occur at trial," defense counsel responded affirmatively.[2] Defense counsel did not request another continuance or any additional time for further inspection of the machete or discussion with Francis. Nothing in the record indicates that the machete had any unique characteristics requiring further inspection or testing or that Francis had a different defensive

---

[2] We note that defense counsel renewed his objection after the continuance was granted.

18

theory to present had he known of the machete's existence at an earlier time. Any error in the admission of the machete was harmless under these circumstances.

We overrule Francis's second issue.

## C.     Threatening Phone Calls during Punishment Phase of Trial

In his third issue, Francis argues that "[t]he trial court erred in admitting audio recorded telephone conversations of [him] while in custody at the Harris County Jail in violation of article 37.07 §3(g) of the Texas Code of Criminal Procedure." We note that the audio-recordings of the threatening phone calls were not actually offered or admitted into evidence at any point during the trial. Francis's article 37.07 objection went to Thomas's punishment-phase testimony that Francis called her from jail and stated that "if he [was] found guilty, . . . two people [would] not walk out of here that day" and that she worried the statement was a threat against her life. We thus consider whether the trial court erred by overruling Francis's objection to Thomas's testimony because the State failed to provide notice under article 37.07 of what constituted another bad act by Francis.

Article 37.07(3)(g) of the Code of Criminal Procedure—rather than rule 404(b)—governs the admissibility extraneous offense evidence during the punishment phase of trial. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2012) (relating to evidence of extraneous offenses introduced during punishment phase of trial); TEX. R. EVID. 404(b) (relating to evidence of

19

extraneous offenses introduced during guilt phase of trial); *see also Ramirez v. State*, 967 S.W.2d 919, 923 (Tex. App.—Beaumont 1998, no pet.) (acknowledging that, although notice requirements of article 37.07(3)(g) and rule 404(b) are similar, rule 404(b) request does not apply to evidence that State intends to introduce only during punishment). Under article 37.07(3)(g), the State must give notice in the same manner as under rule 404(b), which requires "reasonable notice" in advance of trial.[3] *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g); *see also* TEX. R. EVID. 404(b). Neither article 37.07(3)(g) nor rule 404(b), however, defines "reasonable notice." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g); TEX. R. EVID. 404(b). Thus, courts determine whether notice is reasonable based on the facts and circumstances of each individual case. *See Sebalt v. State*, 28 S.W.3d 819, 822 (Tex. App.—Corpus Christi 2000, no pet.); *Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd).

Here, it is undisputed that the State gave Francis notice of its intent to use evidence of the threatening calls at 4:30 p.m. on a Friday. The guilt phase of trial began the following Monday, the jury returned its verdict on Tuesday, and the punishment phase began on Wednesday. Thus, the State gave notice of the

---

[3] Because the notice requirements of article 37.07(3)(g) and rule 404(b) are similar, case law regarding the notice requirements of rule 404(b) is persuasive for the resolution of article 37.07(3)(g) issues. *See President v. State,* 926 S.W.2d 805, 808 (Tex. App.—Austin 1996, pet. ref'd).

threatening phone calls only three days before the commencement of trial and five days before punishment. It is also undisputed that the audio-recordings turned over to defense counsel were "voluminous." The prosecutor, however, stated that she told defense counsel which phone call the State intended to present evidence about during punishment and that the phone call was one of Francis's first phone calls from jail, occurring within the first twenty minutes of the recordings. The prosecutor also stated that she had produced the recordings to the defense on the same day she heard them.

Although at least one court of appeals has determined that the filing of a rule 404(b) response on a Friday is not reasonable notice for a trial that begins the following Monday, there is no per se rule of unreasonableness. *Compare Hernandez v. State*, 914 S.W.2d 226, 234 (Tex. App.—Waco 1996, no pet.) (trial court did not abuse its discretion by finding that three days *was not* reasonable notice), *with Ramirez*, 967 S.W.2d at 923 (trial court did not abuse its discretion by finding that three days *was* reasonable notice), *and Patton*, 25 S.W.3d at 394 (trial court did not abuse its discretion by finding that notice given by fax on Sunday evening, but not received until Monday morning, was reasonable for Tuesday trial). And we do not find the notice given by the State in this case to be unreasonable under the circumstances—the prosecutor turned the recordings over to defense counsel immediately after she heard them, she specified for defense

21

counsel which phone call she intended to offer evidence of at punishment, and she informed defense counsel that the phone conversation could be found within the first twenty minutes of the recordings.

Moreover, because no constitutional error is involved when evidence of uncharged misconduct is admitted without notice, we must disregard any error that did not affect Francis's substantial rights. *See* TEX. R. APP. P. 44.2(b). Defense counsel had the opportunity to, and did, cross-examine Thomas regarding the phone call. If the evidence of the threatening phone call was a legitimate surprise that required a re-evaluation of Francis's strategy at the punishment phase, he could have requested a continuance. His failure to do so precludes us from holding that, even if there was error in the admission of the phone call evidence, the error was harmful. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."); *see also McDonald*, 179 S.W.3d at 578 (considering defendant's failure to request continuance as factor weighing against finding of harm when State failed to give timely rule 404(b) notice); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.) (defendant waived any complaint that he was surprised by State's untimely notice by failing to request continuance).

For these reasons, we overrule Francis's third issue.

## Denial of Mistrial

The State asked its final witness, Officer C. Porter with HPD's family violence unit, whether he believed Thomas was credible. Porter responded, "Yes, and looking at the criminal history of the defendant . . . ." Francis objected under rule 404(b) that the witness had impermissibly disclosed Francis's criminal history and requested a mistrial.[4] The State conceded error, and the trial court instructed that it could consider Porter's "yes" answer but it could not consider "any other part of his answer for any purpose whatsoever." The trial court denied Francis any additional relief. Francis contends in his fourth issue that the trial court should have granted a mistrial.

### A. Standard of Review

We review the trial court's ruling on the motion for mistrial for abuse of discretion. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). To constitute an abuse of discretion, the trial court's ruling must fall outside of the zone of reasonable disagreement. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

---

[4] Francis's objection in the trial court was only to Porter's answer. Francis did not object to the State's inquiry into Porter's opinion of Thomas's credibility in the trial court, and he has not complained about that inquiry on appeal.

## B. The jury instruction cured the error

"A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 76−77 (Tex. Crim. App. 2004) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)); *see Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (explaining that "[m]istrial is a remedy appropriate for a narrow class of highly prejudicial and incurable errors"). Thus, the determination of whether the trial court properly denied Francis's motion for mistrial involves most, if not all, of the same considerations as a harm analysis. *Hawkins*, 135 S.W.3d at 77. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer[.]" *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (instruction to disregard cured harm from improper impeachment of witness on subject of defendant's prior convictions); *Hinojosa v. State,* 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (instruction to disregard cured admission of irrelevant and potentially prejudicial witness testimony). The jury is presumed to follow the trial court's instruction to disregard unless the evidence is so prejudicial or extreme that the instruction was incapable of removing the harm. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (observing, "In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any

24

material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury."). Mistrials should be granted only when the error is "highly prejudicial and incurable." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).

Francis asserts that this case is not like most cases because Officer Porter's reference to Francis's "criminal history" was so inflammatory that it could not be cured by the trial court's instruction to disregard and required a mistrial. In support of this assertion, Francis cites to an eighty-five-year-old opinion from the Court of Criminal Appeals. *See Ulmer v. State*, 292 S.W. 245, 245 (Tex. Crim. App. 1927). In *Ulmer*, the defendant was charged with raping his daughter. At trial another of the defendant's daughters was allowed to testify, unresponsively, both that her father had been to the penitentiary and that he had fathered her illegitimate baby. The Court observed that the error in admitting both statements was "one that cannot be cured." *Id.* at 246.

*Ulmer* does not dictate a conclusion that the harm from Officer Porter's statement in this case was incurable. The nature of the answers in *Ulmer* was far different from the nature of Porter's answer. In *Ulmer,* the extraneous matter—a sexual offense committed against the complainant's sister—went directly to the heart of the offense for which the defendant was charged. That a reference was

made to the defendant's time in the penitentiary only compounded the harm. Here, Porter testified only that Francis had a "criminal history." He did not specify what that history entailed, whether Francis had been imprisoned, or otherwise reference any matter that went to the heart of the aggravated robbery for which Francis was on trial. After Porter made the objectionable statement, the trial court quickly instructed the jury to disregard it and the State concluded Porter's examination; thus, unlike in *Ulmer*, there was no aggravating circumstance that compounded any harm to Francis.

Porter's reference to Francis's "criminal history," without any further detail, was not so inflammatory that the trial court's instruction to disregard could not cure the harm. *See Gardner*, 730 S.W.2d at 679 (concluding that evidence that defendant had been incarcerated, unembellished, was not so inflammatory as to undermine efficacy of trial court's instruction to disregard). We therefore hold that the trial court did not abuse its discretion in denying Francis's motion for mistrial after the jury was instructed to disregard Porter's testimony about Francis's criminal history.

We overrule Francis's fourth issue.

## Sufficiency of the Evidence

In his fifth issue, Francis contends that the evidence is legally insufficient to sustain the aggravated robbery conviction because Thomas's testimony was not credible.

### A.  Standard of Review

We assess the legal sufficiency of the evidence by determining whether, based on all of the evidence viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In applying this standard, we must defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact finder. *Williams,* 235 S.W.3d at 750.

### B.  Thomas's testimony supports the conviction

The State was required to prove that Francis committed aggravated robbery by committing robbery and using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). Relevant here, Francis committed robbery

27

if, in the course of committing theft with the intent to obtain or maintain control of the property, he intentionally or knowingly threatened or placed Deborah Thomas in fear of imminent bodily injury or death. *Id.* § 29.02(a)(2). Theft was committed if Francis unlawfully appropriated property with the intent to deprive Thomas of property. *Id.* § 31 .03(a) (West Supp. 2011).

Here, the State presented evidence of all of the elements of aggravated robbery. Through Thomas's testimony, the State established a robbery and the use or exhibition of a knife. Thomas stated that Francis beat her with his hands, threatened her with both a pocketknife and a machete, and took $1,000 from her person. As a result of the robbery, Thomas suffered swelling in her face, injuries to her hand and leg, and the loss of four teeth. And through Officer Porter's testimony, the State established that a knife can be a deadly weapon.

Francis nevertheless argues that the evidence is legally insufficient because Thomas's testimony was not credible. To support this argument, Francis relies on the evidence that Thomas did not tell the responding police officer, the emergency medical personnel, or the domestic violence counselor that Francis had threatened her with knives and stolen her money. Thomas explained, however, that on the night of the offense she had difficulty speaking due to her broken teeth and the swelling in her face. She further explained that when she spoke with the domestic violence counselor two days later, she was on medication and was "still dazed."

28

From the guilty verdict, we can infer that the jury found Thomas's explanation for her failure to tell others about the knives used during the robbery credible. It was the jury's sole province to believe all, some, or none of Thomas's testimony and to resolve any conflicts or inconsistencies in the evidence. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Williams*, 235 S.W.3d at 750. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Francis committed aggravated robbery.

We overrule Francis's fifth issue.

## Conclusion

Having overruled each of Francis's issues on appeal, we affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Publish.   TEX. R. APP. P. 47.2(a).