**Opinion issued December 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00410-CR

————————————

**RICHARD RECIO, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1459599**

---

## MEMORANDUM OPINION

The State charged Appellant, Richard Recio, Jr., with robbery.[1] Appellant

pleaded not guilty. The jury found him guilty and sentenced him to 25 years'

---

[1] *See* TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011), § 31.03(a) (Vernon Supp. 2015).

confinement after Appellant pleaded true to an enhancement paragraph. In two issues on appeal, Appellant argues the trial court abused its discretion by denying his motion for mistrial and the evidence is insufficient to support his conviction.

We affirm.

## Background

Carlos Maldonado was on his way home from work around 10:00 at night on June 19, 2014. A traveling train blocked his usual route home and he decided to try to find another way home. He turned onto a side street.

Moments before, Arnold Pyle had been sitting in the garage of his home in the same area. A man walked up to Pyle, displayed a gun, and asked Pyle if he wanted to buy it. Pyle pointed out the gun had no bullets or clip, so it did not work. The man insisted the gun did work. "I'll show you." The man walked into the street, approached a car that had turned onto the street, and pointed the gun at it. The car was Maldonado's.

Maldonado stopped when he saw a man approaching his car with a gun pointed at him. The man opened the driver's side door, pulled Maldonado out, and dragged him to the sidewalk. The man emptied Maldonado's pockets and then left in Maldonado's car. After he left, Maldonado and Pyle saw another car parked nearby take off quickly and follow Maldonado's car. Maldonado saw the drivers next to each other, talking as they drove down the street.

2

After Maldonado got up, Pyle offered his phone for Maldonado to call the police. A few minutes later, police arrived. They got a description of the robber and the car. Maldonado saw tattoos on the robber's arms, and included that in the description.

Two hours later, two of the officers that had arrived on the scene saw Maldonado's car pulling into a convenience store. The officers performed a stop and got the passengers out of the car. The driver was Appellant's brother. Appellant was sitting in the front passenger seat. As he got out of the car, he placed Maldonado's phone on the roof of the car. While searching the car, the police found a gun was found under the front passenger seat.[2] Appellant had tattoos on his arms, among other places.

After the scene was secured, police brought Maldonado to the convenience store. Maldonado identified the car and cell phone as his. The next day, an investigator showed Maldonado a photo array which included a picture of Appellant. Maldonado identified Appellant as the man that robbed him. The investigator also showed a photo array to Pyle. Pyle testified at trial that he is bad at recognizing faces and could not identify in the array the man that had approached him that night.

---

[2] After the gun was analyzed in police custody, it was determined that the gun was designed to only shoot blanks.

At trial, Maldonado, speaking through an interpreter, described the sequence of events for the robbery, the recovery of his possessions, and his identification of Appellant in the photo array. He testified that the person he had identified in the array was the person who had robbed him. He also performed an in-court identification of Appellant as the person who robbed him.

On cross-examination, Appellant's counsel asked Maldonado if the picture he circled in the photo array was a picture of Appellant. Maldonado testified, "No." On redirect examination, the following exchange occurred:

Q. Now, your identification of [Appellant] though is back on that day when you looked at that photo array?

A. Uh-huh. Yes.

Q. Was that based on your memory of being robbed?

A. Yes.

Q. And [Appellant] today in the courtroom does he look different than he did back then?

A. Yes.

Q. In what way does he look different?

A. His hair.

Q. But when you identified him in the courtroom today is that still based on your memory of seeing him the night that you were robbed?

A. Yes.

Also at trial, Investigator D. Salinas, who had presented the photo array to Maldonado the day after the offense, testified about the process of creating the photo array. In response to a question from the State about what it means to put "a robbery hold on somebody" that has been arrested, Investigator Salinas disclosed that Appellant had initially been charged with "felon in possession of a firearm." The trial court excused the jury and instructed Investigator Flores to not testify about Appellant's prior criminal history. After that, the following exchange occurred:

> [APPELLANT'S COUNSEL]: If I may Your Honor before the jury comes back in obviously the answer was given before I had an opportunity to object but I would object to the answer he was being held in felon on possession of firearm would move for a mistrial.
>
> THE COURT: Overruled.
>
> [APPELLANT'S COUNSEL]: Move for an instruction to the jury to disregard any testimony that may have indicated that Mr. Recio has any prior criminal history.
>
> THE COURT: All right. I'll grant that.

After the jury returned to the courtroom, the trial court told the jurors, "Ladies and Gentlemen if you heard any testimony that suggested that the Defendant might have any prior criminal history the Court's going to instruct you not to consider that. Disregard it and do not use it at all for your deliberations in this case in trial."

5

**Sufficiency of the Evidence**

In his second issue, Appellant argues the evidence is insufficient to support his conviction.

**A.    Standard of Review**

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2788–89 & n.11; *Laster*, 275 S.W.3d at 518.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.    Analysis**

Appellant does not challenge the evidence to support the claim that Maldonado had been robbed. Instead, Appellant argues that the evidence was insufficient to establish that he was the person who robbed Maldonado. For support, Appellant asserts that

> Maldonado testified that the person he picked out of the photo array was not Appellant; Appellant and his brother look similar; Pyle – who spoke face-to-face with the male seconds before the robbery – was unable to identify Appellant; and, although[] Appellant was found in

Maldonado's vehicle[,] it was hours after the robbery and his brother was the driver.

Appellant further asserts that the gun found in Maldonado's car was never tested for fingerprints and that Maldonado and Pyle were never shown photo arrays with Appellant's brother in them.

The identity of the person committing the offense is an element of the crime that must be proved. *See Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984) (holding State has burden of proving defendant committed charged offense); *Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (noting defendant's identity can be proved by direct or circumstantial evidence and that eyewitness identification is not necessary). Identity may be proven by direct or circumstantial evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Greene*, 124 S.W.3d at 792.

Maldonado testified that he saw the person robbing him approach the car, pointing a gun at him. For a period of time during the incident, Maldonado was prone on the ground and could not see the robber. But Maldonado saw the robber's face before and after that point. The next day, Maldonado identified Appellant in a photo array. At trial, Maldonado testified that the person he had identified in the array was the same person who had robbed him. He also performed an in-court identification of Appellant as the person who robbed him.

8

Appellant argues that Maldonado's post-robbery and in-court identifications of him as the robber are insufficient because, during cross examination, Maldonado testified that the photo of Appellant in the array was not actually a photo of Appellant. After this, on redirect examination, Maldonado confirmed that he had identified in the photo array the person who had robbed him and that his in-court identification of Appellant was based on his memory of seeing him during the robbery. On both direct and redirect examination, then, Maldonado confirmed that he identified the person who had robbed him in the photo array and that Appellant was the same person who had robbed him. Any conflicts in Maldonado's testimony during cross-examination was for the jury to resolve. *See Clayton*, 235 S.W.3d at 778.

Likewise, Appellant's claims that he and his brother look alike, that Pyle failed to identify him in a photo array, and that Appellant was not driving the car when it was recovered were matters for the jury to weigh. *See id.* We must defer to those determinations. *See id.*

Finally, Appellant's complaints about what evidence is not in the record have no bearing on our review. A sufficiency of the evidence review is based on the evidence admitted at trial. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) ("When conducting a sufficiency review, we consider all the evidence admitted."). If that evidence is sufficient, we must affirm regardless of what other

9

evidence might have been admitted. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (holding courts review evidence in record in light most favorable to verdict and determine whether rational jurors could have found essential elements of crime beyond reasonable doubt).

We hold the evidence is sufficient to support the jury's determination that Appellant was the person that robbed Maldonado. We overrule Appellant's second issue.

## Motion for Mistrial

In his first issue, Appellant argues the trial court abused its discretion by denying his motion for mistrial.

## A. Standard of Review

Challenging a trial court's actions for denying a motion for mistrial is reviewed for an abuse of discretion. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We view "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

**B. Preservation**

As an initial matter, the State argues that Appellant's motion for mistrial has not been preserved. At trial, the State asked Investigator Salinas about what it means to put "a robbery hold on somebody" that has been arrested. While answering, Investigator Salinas revealed that Appellant had initially been arrested for "felon in possession of a firearm." No objection was raised, but the trial court excused the jury and instructed Investigator Salinas to not testify about Appellant's prior criminal history. After that, the following exchange occurred:

> [APPELLANT'S COUNSEL]: If I may Your Honor before the jury comes back in obviously the answer was given before I had an opportunity to object but I would object to the answer he was being held in felon on possession of firearm would move for a mistrial.
>
> THE COURT: Overruled.
>
> [APPELLANT'S COUNSEL]: Move for an instruction to the jury to disregard any testimony that may have indicated that Mr. Recio has any prior criminal history.
>
> THE COURT: All right. I'll grant that.

The State argues that these objections and rulings were insufficient to preserve error because Appellant failed to object before the trial court excused the jury. The Court of Criminal Appeals has rejected this argument.

> [T]he most important procedure is to press the specific objection to the point of obtaining an adverse ruling, be that to the objection, the request for an instruction, or the motion for mistrial. If the objection is overruled, an adverse ruling is immediately obtained. It has even been

11

held that a request for a mistrial, which was overruled, followed by a granted request for an instruction to disregard was a method deemed sufficient to preserve the claim of error.

*Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992) (internal citations omitted).

The authority relied on by the State is not relevant. In *Boyington*, the defendant's counsel did not raise any kind of objection or motion following a reference to the defendant's prior criminal history, and the trial court did not take any corrective action on its own initiative. *Boyington v. State*, 787 S.W.2d 469, 470–71 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Here, Appellant's counsel moved for mistrial and obtained a ruling. The issue has been preserved for appeal.

## C.    Analysis

After Investigator Salinas testified that Appellant has initially been charged with felon in possession of a firearm, the trial court excused the jury, instructed Investigator Salinas to not make any further references to Appellant's criminal history, and instructed the jury to disregard any reference to Appellant's criminal history. Specifically, the trial court instructed the jury, "Ladies and Gentlemen if you heard any testimony that suggested that the Defendant might have any prior criminal history the Court's going to instruct you not to consider that. Disregard it and do not use it at all for your deliberations in this case in trial." Appellant argues the trial court abused its discretion by denying his motion for mistrial.

12

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon*, 284 S.W.3d at 884 (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial may be used when faced with error so prejudicial that "expenditure of further time and expense would be wasteful and futile." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). In our abuse-of-discretion review, we balance three factors: (1) the severity of the misconduct or the magnitude of the prejudicial effect, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

For the first factor, Appellant's criminal history was not relevant to any issue before the jury at the guilt-innocence phase of the trial. But that alone does not establish that the error was severe or irreparably inflammatory. *See Gardner v. State*, 730 S.W.2d 675, 697 (Tex. Crim. App. 1987) ("That appellant had been to the penitentiary was undoubtedly inadmissible and prejudicial testimony, having no relevance to any issue at the guilt stage of trial. However, that bare fact, unembellished, was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard it."). Simply referencing that the defendant has a criminal history is not, in itself, considered irreparably inflamataory. *See Francis v. State*, 445 S.W.3d 307, 320–21 (Tex. App.—Houston [1st Dist.] 2013), *aff'd on other grounds*, 428 S.W.3d 850 (Tex. Crim. App. 2014). Here, Investigator Salinas

mentioned once that Appellant had a prior felony, but did not state the nature of the offense or provide any other detail.

For the second factor, the trial court instructed the jury to disregard any statements about Appellant's criminal history and to not consider his criminal history in their deliberations. An instruction to disregard is presumed effective unless the particular facts imply otherwise. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (citing *Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992)). As our analysis of the third factor reflects, nothing in the record indicates that the instruction to disregard was not effective.

For the third factor, there is a strong certainty of conviction without the reference to Appellant having a prior felony conviction. Maldonado saw the robber at the beginning and end of the robbery. The robber had distinctive tattoos on his arms that Maldonado could see. Appellant was arrested a little more than two hours after the offense. Maldonado's description of the robber matched Appellant's appearance, including location of tattoos. Appellant was in Maldonado's car and had Maldonado's cell phone in his hand. A gun was located under the front

passenger seat, where Appellant had been sitting. The day after the robbery, Maldonado identified Appellant as the robber in a photo array.

Based on these factors, we hold the trial court did not abuse its discretion by denying Appellant's motion for mistrial. We overrule Appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

15