# NO. 12-18-00349-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LESTER THOMAS BUTCHER,* *APPELLANT* | § | *APPEAL FROM THE 420TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Lester Thomas Butcher appeals his conviction for murder. In one issue, he contends the trial court abused its discretion by denying his motion for a mistrial after the jury heard evidence that he previously had been to prison. We affirm.

## BACKGROUND

Appellant was indicted for the capital murder of James Steitler. The indictment alleged that Appellant, on or about April 9, 2017, in Nacogdoches County, Texas, intentionally caused Steitler's death by shooting Steitler with a firearm, stabbing him with a knife, and striking him with a bat while in the course of committing or attempting to commit the offense of burglary. The State did not seek the death penalty. Appellant entered a plea of "not guilty" and the case proceeded to a jury trial.

At trial, the evidence showed that Appellant was at Ricky Butcher's home on April 8, the evening before Steitler's murder. Ricky, Appellant's brother, and Steitler were neighbors in a rural area near Trawick, Texas in Nacogdoches County. Appellant left Ricky's home in the late evening hours of April 8 and returned sometime after midnight on April 9. Ricky and Appellant's nephew, Alvin Blangger, testified that when Appellant returned, he was panicked. Blangger testified he heard Appellant tell Ricky "we don't have to worry about that [expletive] anymore because he's

dead." Blangger further testified to hearing Appellant say "if the cops come, I was never here." Blangger testified he observed Appellant and Ricky go outside and then heard Appellant leave in his vehicle.

After Appellant left, Ricky contacted the Nacogdoches Sheriff's Office and requested a welfare check on Steitler. Law enforcement arrived and located Steitler's dead body in his bedroom, laying in a pool of blood. Law enforcement discovered that the back window to Steitler's home had been broken and the door to his bedroom was cracked near the doorknob. Law enforcement learned about Appellant's statements regarding Steitler's murder, and began searching for him.

Appellant arrived at a residence in Chandler, Texas in the early morning hours of April 9. Waylon and Richard Barton, two brothers present at the Chandler residence, testified at trial that Appellant appeared scared, had blood on his person, and was carrying bloody clothes. Waylon testified that Appellant asked the brothers for clean clothes and help cleaning the blood out of his truck. Waylon testified that he observed Appellant pull a bat from the back of his truck and walk between the house and two sheds located on the property. Waylon testified that he then saw flames coming from that direction. Richard testified that Appellant asked him to help him dispose of a shotgun. Richard testified that he gave Appellant a pair of shorts, but refused to help him clean his car or dispose of the shotgun. Law enforcement located Appellant in the Chandler vicinity on April 10, and took him into custody. Appellant gave a recorded statement to law enforcement. In that statement, Appellant told the officer that Steitler sold methamphetamine and pills. According to Appellant, he took Richard to Steitler's residence on the evening of the murder so that Richard could buy some pills from Steitler. Appellant denied murdering Steitler, and blamed Richard for the murder.

Law enforcement searched the Chandler property and located a knife and bat from a burn barrel. Next to the burn barrel, law enforcement located a shotgun from under some debris. Forensic testing revealed that Appellant's DNA was present on the bat recovered from the burn barrel, and Steitler's DNA was present on the shotgun recovered next to the burn barrel. Steitler's mother, Darlene Bates, was able to identify the shotgun as Steitler's. She testified that she saw the shotgun in Steitler's room on April 8. Appellant's ex-girlfriend, Stacie Breeden, identified the knife found in the burn barrel as belonging to Appellant. Breeden told law enforcement that the knife was one of two from a set that Appellant kept in his bedroom at Ricky's home. Law

2

enforcement located the other knife, and a sheath capable of holding both knives, in Appellant's bedroom at Ricky's home.

Dr. Ami Murphy, a forensic pathologist, testified that Steitler's body showed forty blunt impact injuries, thirteen blade wounds, and a shotgun wound to the right forearm that also involved the right side of the chest, the chin, the jaw, and the left hand. She testified that Steitler's death was ruled a homicide and his cause of death was blunt impact trauma to the head, stab wounds to the face and neck, and a shotgun wound to the forearm.

At the conclusion of the trial, the jury found Appellant "guilty" of capital murder. Appellant was sentenced to life without parole.[1] This appeal followed.

## DENIAL OF MOTION FOR MISTRIAL

In his sole issue, Appellant argues that the trial court abused its discretion by denying his motion for mistrial after the jury heard evidence that he had previously been to prison.

### Standard of Review and Applicable Law

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard, and its ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether an error requires a mistrial is determined by the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Id.* In determining whether the trial court abused its discretion in denying the

---

[1] In cases where the state does not seek the death penalty, an individual adjudged guilty of a capital felony shall be punished by imprisonment for life without parole if the individual committed the offense when eighteen years of age or older. TEX. PENAL CODE ANN. § 12.31(a)(2) (West 2019).

mistrial, we consider the severity of the misconduct (prejudicial effect), any curative measures taken, and the certainty of conviction absent the misconduct. *Hawkins*, 15 S.W.3d at 77.

**Appellant's Recorded Statement**

Prior to trial, Appellant filed two motions in limine and a motion to exclude certain portions of his recorded statement given to law enforcement about the murder. The first motion in limine requested that the State's attorney refrain from mentioning or eliciting testimony regarding any extraneous offense, wrongs, or acts committed by Appellant until a ruling on the admissibility of the evidence could be made outside the jury's presence. The second motion in limine requested the same procedure in reference to Appellant's prior criminal record. Both motions were granted.

The motion to exclude portions of Appellant's statement requested the trial court exclude designated time periods of his recorded interview. Appellant argued that the designated portions contained inadmissible hearsay or references to inadmissible extraneous offenses. Prior to the beginning of voir dire, the State and the defense agreed to mute the time frames designated in Appellant's motion while playing the interview for the jury. The muted portions referenced in Appellant's motion and agreed upon by the parties were referenced in minutes and seconds.

During the State's case in chief, the State offered, and the court admitted Appellant's recorded statement as State's exhibit 357, subject to the agreement to mute the designated portions. While State's exhibit 357 was published to the jury, Appellant's counsel asked to approach the bench. The court took a recess and sent the jury out of the courtroom. On the record, but outside the presence of the jury, Appellant's counsel objected to the "portion of the tape that was played that stated briefly about [Appellant] going to prison" because it violated his motion in limine. The State maintained that it muted the portions designated in Appellant's motion, and Appellant's counsel clarified that he was not alleging that the State intentionally violated his motion in limine. Appellant asked the trial court to instruct the jury to disregard the statements and requested a mistrial. The trial court denied Appellant's motion for mistrial, but granted his request for an instruction to disregard.

The trial court clarified the objectionable statements as follows:

> And, I guess, so the record is clear, what I wrote down—or what I heard was there was a reference where I think Ranger Hicks said, was your mom upset when she found out you were going to prison, or words to that effect.

4

Appellant's counsel agreed that the foregoing was the objectionable statement played before the jury. Thereafter, the court took a recess so State's counsel and Appellant's counsel could reexamine exhibit 357 to ensure that, going forward, the designated time frames would exclude any inadmissible extraneous offense evidence. After the recess, State's counsel informed the court that the parties inadvertently wrote down the wrong ending time frame, which explained why the objectionable statement was published to the jury. Counsel for the State clarified that instead of muting exhibit 357 from 25:30 through 29:22, the exhibit should have been muted from 25:30 through 31:10 to exclude all references to Appellant previously having been to prison. Appellant's counsel requested the court instruct the jury to disregard the portion of the recording that was played at 29:22 through 31:10. Appellant's counsel clarified that he did not want the court to specifically mention the statement, to avoid further drawing the jury's attention to the fact that Appellant had previously been to prison. The court granted Appellant's request and instructed the jury to disregard the statements it heard from 29:22 to 31:10 of exhibit 357 and not consider them for any purpose whatsoever. Thereafter, the State resumed publishing exhibit 357, and no further references to Appellant's having been to prison were made.

## Analysis

On appeal, Appellant argues that "the statement about [his] previously going to prison made it impossible to remove the harmful effects of the testimony from the minds of the jury, especially considering the nature of the allegations—capital murder." He further argues that, even though the trial court instructed the jury to disregard the statement, "the damage was done." Appellant cites no authority for his argument. *See* TEX. R. APP. P. 38.1(i).

Generally, when evidence comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, the courts rely on what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. *See **Gardner v. State***, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). In this case, there was a brief, inadvertent, reference to Appellant having been to prison at some point before the trial of this case. There was no mention of what charge Appellant went to prison for, when he went to prison, or the circumstances that led to Appellant going to prison. After the statement was admitted, the court took a brief recess to discuss the matter outside the presence of the jury, and when the trial resumed, the court promptly instructed the jury to disregard the evidence.

5

We must presume that the jury followed the trial court's instruction to disregard the statement. *See Coble*, 330 S.W.3d at 293. Furthermore, we conclude that a brief, inadvertent reference to Appellant having previously been to prison, without any further detail, was not so inflammatory that the trial court's instruction to disregard could not cure the harm. *See Gardner*, 730 S.W.2d at 679; *see also, e.g.*; *Francis v. State*, 445 S.W.3d 307, 320 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014). We further note that the evidence produced at trial to prove Appellant's guilt, as previously discussed at length, was substantial. *Hawkins*, 15 S.W.3d at 77. Thus, we hold that the trial court did not abuse its discretion in denying Appellant's motion for mistrial. *Coble*, 330 S.W.3d at 292. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered October 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2019**

**NO. 12-18-00349-CR**

**LESTER THOMAS BUTCHER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 420th District Court

of Nacogdoches County, Texas (Tr.Ct.No. F1723232)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*