**Opinion issued March 9, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00177-CR

## NO. 01-19-00179-CR

———————————

## ISIDRO RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1557022 and 1557018**

---

## MEMORANDUM OPINION

A jury convicted appellant Isidro Rodriguez of aggravated assault and aggravated sexual assault.[1] The trial court assessed punishment at 10 years'

---

[1]    *See* TEX. PENAL CODE §§ 22.02, 22.021.

confinement for the aggravated assault and 20 years' confinement for the aggravated sexual assault. In two issues on appeal, Rodriguez contends the trial court erred by (1) admitting certain evidence related to DNA testing and (2) refusing to grant a mistrial after the State elicited testimony supporting an inference of guilt based on his refusal of consent for DNA testing.

We affirm.

## Background

M. Aguirre, the 17-year-old aggravated-sexual-assault complainant, testified that on June 29, 2017, she decided to spend the night with her boyfriend T. Snape. Snape, the 22-year-old aggravated-assault complainant, was renting a room in Rodriguez's townhouse.

Aguirre had met Rodriguez before but did not know him well. She and Snape shared a drink with Rodriguez in the evening, when Rodriguez also was smoking marijuana and snorting what she believed to be cocaine or methamphetamine.[2] She and Snape later drove to a gas station. When they returned 20 or 30 minutes later, Rodriguez's demeanor was no longer friendly or relaxed. Aguirre became uncomfortable and went to bed.

Around this time, Rodriguez claimed that his wallet was missing, and he and Snape began to look for it. Rodriguez picked up a shotgun he kept in the house. He

---

[2] Snape testified that all present were smoking marijuana, not just Rodriguez.

initially did not point the shotgun at Snape. But Snape had a handgun in his pocket, which he usually carried for protection. When Rodriguez noticed Snape touch his pocket, he pointed the shotgun at Snape and demanded that Snape hand over the gun. Rodriguez and Snape agreed to put their guns down at the same time. When Snape set his gun down, however, Rodriguez grabbed it and kept the shotgun. Rodriguez accused Snape and Aguirre of stealing his wallet.

Rodriguez demanded that Snape wake up Aguirre to ask about the missing wallet. Aguirre panicked when she awoke and noticed that Rodriguez had a gun. At gunpoint, Aguirre complied with Rodriguez's instruction to remove her clothing. Rodriguez sent Snape outside to check his car for the wallet and then locked Snape out of the townhouse. Snape got in his car, initially tried to attract the attention of police by speeding in the car, then called a friend and his mother, and eventually used his cell phone to call the police to report the incident.

Once Snape was gone, Rodriguez told Aguirre that he "was going to rape her" and demanded that she perform oral sex. She initially refused but after Rodriguez struck her twice with a gun, she placed his penis in her mouth. Rodriguez threatened that Aguirre "might not make it out alive" even if she complied with his demand. When he moved Aguirre to the bed, she noticed the flashlight beams from police officers outside but was too scared to scream for help.

The police knocked on the door, and Rodriguez answered. One of the officers, Deputy R. Riojas with the Harris County Sheriff's Office, observed that Rodriguez was shirtless, sweaty, and that his pants were "not all the way up around his waist" when he answered the door. Rodriguez permitted the police to enter the home to check on Aguirre's welfare. Deputy Riojas heard a female "crying hysterically and screaming in the background." She found Aguirre on a "dirty bed wearing a black tank top and a fuchsia thong." Aguirre was calling out, "He was trying to rape me. Please help me. Get me out of here."

Aguirre told Deputy Riojas that Rodriquez had held her at gunpoint, forced her to perform oral sex, and "pistol-whipped" her on the left side of her head. Deputy Riojas felt a bump on Aguirre's head—in the area where Aguirre stated she had been struck—and recovered a loaded handgun and a shotgun.[3] Deputy Riojas observed drug paraphernalia at the scene and recovered pills which she recognized as Xanax.[4]

Aguirre consented to give Deputy Riojas an oral DNA swab at the scene. Deputy Riojas also collected a DNA sample from Snape. Rodriguez declined to provide a DNA sample at the scene. At the time Rodriguez refused to consent to

---

[3]  A CT scan of Aguirre's head and neurological assessment did not reveal any internal head injury or visible deformity.

[4]  Deputy Riojas also found "remnants" of marijuana in the home but did not find any cocaine or methamphetamines despite Aguirre's statements to Deputy Riojas that Rodriguez had been using those narcotics.

provide a DNA sample, he was handcuffed and, as described by Deputy Riojas, "secured" in her patrol car.[5]

Deputy Riojas transported Rodriguez to a substation jail, where Rodriguez became ill and vomited on the floor. Deputy Riojas obtained a DNA sample from Rodriguez's vomit. Later, another officer, Deputy N. Fitts with the adult sex crimes unit of the Harris County Sheriff's Office, secured a search warrant and took a second DNA sample from Rodriguez using an oral swab.

At trial, the State presented the evidence related to obtaining a DNA sample from Rodriguez and of the DNA testing process and results. Deputy Riojas was asked on direct examination whether she asked Rodriguez to provide a DNA sample after his arrest. Rodriguez's counsel objected and, at a bench conference, argued that the State's question sought to elicit testimony that Rodriguez had invoked his right to counsel in response to the request for a DNA sample and that his refusal of consent was an exercise of his privilege against self-incrimination. The trial court overruled the objection, and Deputy Riojas was permitted to testify about Rodriguez's refusal of consent.

---

[5]    Deputy Riojas testified that prior to being secured in her car, Rodriguez was "in [another officer's] custody in the back of their patrol car." After she interviewed Aguirre and Snape, she "took custody of [Rodriguez]," "re-secured him in [her] handcuffs," and "secured" him in her patrol car.

5

Deputy Fitts also testified, without objection, that Rodriguez declined to provide a DNA sample. Deputy Fitts explained that Rodriguez was taken to a hospital, where Deputy Fitts interviewed Rodriguez after speaking with Aguirre at the same hospital. Because Rodriguez was handcuffed at the hospital, Deputy Fitts read Rodriguez his *Miranda* warnings.[6] According to Deputy Fitts, Rodriguez waived his *Miranda* rights and agreed to give a statement. When asked whether he took an oral swab from Rodriguez, Deputy Fitts answered: "No, he declined." Deputy Fitts indicated, however, that he got a search warrant and eventually obtained a DNA sample from Rodriguez.

The State probed further as to refusals of consent with Deputy Fitts, asking whether Deputy Fitts was familiar with the forms that warn persons suspected of driving while intoxicated that "refusing to provide a breath specimen" can be used as evidence against them. The trial court sustained Rodriguez's objection to this testimony regarding inferences of guilt and instructed the jury to "disregard the question that was just asked by the prosecutor and any response made by the witness." But the trial court denied Rodriguez's request for a mistrial. Rodriguez's counsel then cross-examined Deputy Fitts about whether the inference of guilt applied in non-DWI cases. Deputy Fitts agreed it did not.

---

[6]     *See Miranda v. Arizona*, 384 U.S. 1602 (1966).

Finally, K. Waiters, a DNA analyst with the Harris County Institute of Forensic Sciences, testified about the DNA testing and results. She explained that it was her responsibility to screen evidence in this case for "the possible presence of biological fluid," test samplings of any such fluids to determine whether a DNA profile is present, and then compare the DNA profile to reference samples from known individuals. Her three reports setting out the results of her DNA analysis in this case included her conclusions as to "whether or not a person is excluded from [a] piece of evidence or [a] person cannot be excluded from [a] piece of evidence." Waiters opined that Rodriguez could not be excluded as a possible contributor to DNA recovered from Aguirre's mouth. She testified that her opinion related to the presence of a single "Y-STR profile," which is associated with the male chromosome, in the "non-sperm fraction" cut from Aguirre's oral swab. Waiters contrasted "non-sperm fractions" with "sperm fractions," explaining her expectation that "any non-sperm cellular material would be obtained in the non-sperm fraction if there was sperm present. And then . . . in the sperm faction would be that type of material."

Before Waiters testified as to "sperm fractions" and "non-sperm fractions," Rodriguez objected outside the presence of the jury that the testimony was inadmissible under Texas Rule of Evidence 403 because it was misleading and

highly prejudicial in an aggravated-sexual-assault case.[7] The trial court overruled the objection. On cross-examination, Rodriguez challenged whether Waiters's analysis revealed that sperm was present in Aguirre's mouth in the following exchange:

Q.   Ms. Waiters, first of all, I just want to make sure it's clear for the jury. The terminology, non-sperm and sperm fraction, that is something that you use in your forensic testing, but it does not mean that it was actually sperm that was tested.

A.   That is correct.

Q.   Okay. So, you cannot tell this jury that sperm was found on . . . the buccal swabs from [M.] Aguirre?

A.   That is correct. Serology was not performed on this item.

Q.   So, the non-sperm and sperm fraction terminology, they should not be confused by that into thinking that that was actually sperm, right?

A.   Yes.

**Admission of Evidence**

In his first issue, Rodriguez contends the trial court erred by permitting the DNA analyst Waiters "to present prejudicial evidence using the terms 'sperm fraction' and 'non-sperm fraction' when there was no sperm present in this case." In

---

[7]   Specifically, Rodriguez objected that the evidence "would be highly misleading to a jury . . . to hear[ ] testimony talking about sperm and non-sperm when [Waiters] cannot testify that there was any sperm recovered" and that those words "come with . . . a lot of prejudice in a sexual assault case." Rodriguez specifically asked that the evidence be excluded under Rule 403 because its prejudicial value outweighed its probative value because the evidence was not necessary or helpful given that there was no dispute in this case regarding whom Aguirre alleged assaulted her.

a portion of his second issue,[8] Rodriguez contends the trial court erred in admitting testimony regarding his refusal of consent to provide a DNA sample.

## A.     Standard of review

We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will uphold an evidentiary ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435.

Generally, the erroneous admission of evidence is non-constitutional error, subject to a harm analysis. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Robinson v. State*, 236 S.W.3d 260, 269 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Non-constitutional error requires reversal only if it affects the accused's substantial rights. TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011). The accused's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will

---

[8]     Rodriguez's second issue also challenges the trial court's denial of a mistrial, which we address separately below.

not overturn a criminal conviction for non-constitutional error if we have fair assurance that the error did not influence the jury or had but a slight effect. *Barshaw*, 342 S.W.3d at 93–94.

**B.      DNA test results**

In his first issue, Rodriguez argues the trial court erred by admitting unredacted DNA reports and DNA analyst testimony referencing "sperm fractions" and "non-sperm fractions" because no sperm was detected in Aguirre's oral sample, making the terms unfairly prejudicial in this aggravated-sexual-assault case. According to Rodriguez, the admission of this evidence was particularly harmful given that it included the testimony of an expert witness having an aura of special reliability and trustworthiness and purported to be objective evidence from which the jury could infer the veracity of Aguirre's allegations.

It is not clear from Rodriguez's appellate briefing whether this complaint concerns the admissibility of the challenged evidence under Texas Rule of Evidence 702, regarding expert witnesses, or Texas Rule of Evidence 403, excluding relevant evidence for unfair prejudice, confusion of the issues, or other reasons. TEX. R. EVID. 403, 702. However, we construe Rodriguez's briefing as a complaint under Rule 403, as that was the basis for his objection in the trial court. Because he did not object to the reliability or relevance of the expert testimony under Rule 702, any such objection is not preserved. *See Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—

10

Houston [14th Dist.] 2010, pet. ref'd) (explaining that party must specify basis for objecting to expert testimony); *see also Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) (noting that point of error on appeal must comport with trial objection).

For its part, the State argues Rodriguez's complaint related to the "sperm fraction" and "non-sperm fraction" references is not preserved for our review because Rodriguez did not object under Rule 403 at the time the State proffered the DNA analysis at trial; instead, he objected that the State had not established the chain of custody. We disagree with the State's wavier contention.

Under Texas law, "if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 33.1 (to preserve complaint for appellate review, record must show "the complaint was made to the trial court by a timely, request, objection, or motion" on which trial court ruled or refused to rule). "Further, with two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). The two exceptions require counsel to either (1) obtain a running objection, or (2) request a hearing outside the presence of the jury. *Martinez*, 98 S.W.3d at 193; *see also* TEX. R. EVID. 103(b) ("When the court hears

11

a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.").

In this case, Rodriguez requested a hearing outside the presence of the jury before Waiters testified and, at the conclusion of that hearing, objected to "the introduction of testimony regarding specifically using the terms sperm and non-sperm fractions." Rodriguez argued that because Waiters could not say that sperm was present on Aguirre's oral swab and identity was not disputed, any testimony referencing "sperm fractions" and "non-sperm fractions" was highly prejudicial in a sexual-assault case and, thus, inadmissible under Texas Rule of Evidence 403. The trial court overruled the objection, and thus the trial court's ruling is preserved for our review. TEX. R. EVID. 103(b); *Martinez*, 98 S.W.3d at 193.

Turning to the merits of this issue, however, we do not agree that error, if any, in the admission of the evidence referencing "sperm fractions" and "non-sperm fractions" was reversible error. *See* TEX. R. APP. P. 44.2(b) (non-constitutional error "that does not affect substantial rights must be disregarded"); *King*, 953 S.W.2d at 271 (accused's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict"). Even if we assume, as Rodriguez argues, that the challenged evidence was inadmissible under Rule 403 because it was unfairly prejudicial or could mislead the jury as to whether sperm was

12

detected on Aguirre's oral swab, Rodriguez's own cross-examination minimized the impact of the evidence. Defense counsel ably cross-examined Waiters about whether the jury should conclude from her testimony that she actually found or tested sperm, and she answered each of those questions in the negative. Accordingly, we cannot conclude that any error in the admission of the evidence referencing "sperm fractions" and "non-sperm fractions" had more than a slight effect and affected Rodriguez's substantial rights. TEX. R. APP. P. 44.2(b); *see Barshaw*, 342 S.W.3d at 93–94 (court should not overturn conviction if error did not influence jury or had but slight effect).

We overrule Rodriguez's first issue.

## C. Refusal of consent to DNA testing

In a portion of his second issue, Rodriguez argues that the trial court erred by permitting Deputy Riojas to testify that Rodriguez refused to consent to DNA testing because that testimony was an "impermissible comment on [his] post-arrest invocation of his privilege against self-incrimination and right to counsel." The State responds that Rodriguez's objection to the testimony regarding his refusal of consent is without merit because the record does not establish that he was under arrest at the time Deputy Riojas requested a DNA sample and, thus, his right to remain silent and right to counsel had not yet attached or been invoked.

13

The record on the issue of whether Rodriguez refused Deputy Riojas's request for a DNA sample before or after arrest is not well developed, but the State's argument does not consider the full picture. The testimony on Rodriguez's refusal of consent came from two witnesses—Deputy Riojas and Deputy Fitts—and their testimony described different circumstances.

Although Deputy Riojas did not expressly testify that Rodriguez was under arrest and had been given *Miranda* warnings before she requested a DNA sample, her testimony indicates that Rodriguez had been handcuffed inside of another officer's patrol car for an unspecified time pending her investigation, was removed by Deputy Riojas from that officer's "custody," and then "re-secured" in her own patrol car using her own handcuffs. This testimony suggests circumstances under which a reasonable person might believe his freedom of movement was significantly restricted, and thus that Rodriguez may have been the subject of at least a custodial interrogation at the time he refused consent for a DNA sample. *See Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985) ("'Custodial interrogation' is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."); *see also Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (State may not use statements from "custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination").

14

Deputy Fitts's testimony that Rodriguez refused consent was related to his interrogation of Rodriguez at the hospital, which we can infer, based on Deputy Riojas's testimony, occurred after Rodriguez was transported to a jail substation. Deputy Fitts testified that he read Rodriguez his *Miranda* warnings at the hospital and that a DNA sample was obtained pursuant to a search warrant after Rodriguez refused consent. This testimony certainly suggests circumstances of an arrest. *See* TEX. CODE CRIM. PROC. art. 15.22 ("A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."); *see also Hardinge v. State*, 500 S.W.2d 870, 873 (Tex. Crim. App. 1973) (arrest is complete when person's liberty of movement is restricted or restrained).

Nevertheless, we need not affirmatively answer the question of whether Rodriguez's refusal of consent was pre- or post-arrest because any error in the admission of the testimony on his refusal of consent is not preserved for our review. As the State points out, Rodriguez failed to object to testimony regarding his refusal of consent each time such evidence was offered. TEX. R. APP. P. 33.1; TEX. R. EVID. 103(b); *see Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (error in admission of evidence "is cured where the same evidence comes in elsewhere without objection").

15

Although he objected when Deputy Riojas testified that he did not consent to her request for a DNA sample, Rodriguez did not renew his objection when Deputy Fitts later testified that Rodriguez declined to provide a DNA sample. Nor did he obtain a running objection to such testimony or request a hearing outside the presence of the jury to determine its admissibility. Accordingly, Rodriguez's complaint is waived. TEX. R. APP. P. 33.1; TEX. R. EVID. 103(b); *see Valle*, 109 S.W.3d at 509; *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

We thus do not consider this portion of Rodriguez's second issue.

**Motion for Mistrial**

In the remaining portion of his second issue, Rodriguez argues the trial court should have granted a mistrial after the State elicited testimony supporting an inference of guilt based on his refusal of consent for DNA testing. Specifically, the State asked Deputy Fitts, an adult-sex-crimes investigator, whether he was familiar with the forms warning that a refusal to provide a breath sample may be used as evidence of guilt in a DWI case. Deputy Fitts answered that he was familiar with the forms and that the State had properly characterized them. Rodriguez objected, and the trial court sustained the objection and instructed the jury to disregard the

16

exchange. Rodriguez urges that the additional curative step of a mistrial was necessary because the question and answer suggested a similar inference of guilt from his refusal to give a DNA sample in the aggravated-sexual-assault case.

## A. Standard of review

When the trial court sustains an objection and instructs the jury to disregard but denies a motion for mistrial, the issue is whether the trial court erred in denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). We review the trial court's ruling on the motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). To constitute an abuse of discretion, the trial court's ruling must fall outside the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Francis v. State*, 445 S.W.3d 307, 319 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014).

## B. Jury instruction cured error

"A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins*, 135 S.W.3d at 76–77 (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)); *see Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) ("Mistrial is a remedy appropriate for a narrow class of highly prejudicial and incurable errors[.]"). Thus, the determination of whether the trial court properly

denied Rodriguez's motion for mistrial involves most, if not all, of the same considerations as a harm analysis. *Hawkins*, 135 S.W.3d at 77. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer[.]" *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *see Ladd*, 3 S.W.3d at 567 ("The asking of an improper question will seldom call for a mistrial because, in most cases, any harm can be cured by an instruction to disregard."). Mistrials should be granted only when the error is "highly prejudicial and incurable." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).

Rodriguez did not specify the basis for his objection to the exchange regarding inferences of guilt in DWI cases in the trial court, but he urges in his appellate briefing that it was clear from the context that the basis for the objection was the same as his objection to Deputy Riojas's earlier testimony that he had refused to provide a DNA sample after his arrest. *See* TEX. R. APP. P. 33.1(a)(1)(A) (providing, in relevant part, that for complaint to be presented on appeal, objection must be sufficiently specific "to make the trial court aware of the complaint, *unless the specific grounds were apparent from context*") (emphasis added). To Deputy Riojas's testimony on his refusal of consent, Rodriguez objected that it was inadmissible evidence suggesting the invocation of his rights to counsel and against self-incrimination.

18

Even if we assume the trial court understood this to be the basis of Rodriguez's objection to the exchange during Deputy Fitts's testimony regarding inferences of guilt in DWI cases, this Court and others have held that errors associated with comments on a defendant's invocation of his right to counsel or right against self-incrimination may be cured by a trial court's instruction to disregard the comment. *See, e.g.*, *Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999) (concluding instruction to disregard comment on defendant's failure to testify cured error); *Longoria v. State*, 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding instruction to disregard comment on defendant's failure to testify cured error); *Linder v. State*, 828 S.W.2d 290, 301 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (holding instruction to disregard comment on defendant's failure to testify can cure error); *see also Vierling v. State*, No. 01-10-00247-CR, 2012 WL 4857363, at *8 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, pet. ref'd) (mem. op., not designated for publication) (acknowledging errors associated with comments on defendant's failure to testify and publication of defendant's invocation of right to counsel are subject to constitutional harm analysis under TEX. R. APP. P. 44.2(a)).

Here, the exchange between the State and Deputy Fitts regarding inferences of guilt in DWI cases was short and not repeated or emphasized, and the trial court promptly instructed the jury to disregard the exchange. We must presume the jury

followed the trial court's instruction to disregard unless the particular facts imply otherwise. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) ("In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury."). Nothing in this record indicates that the instruction to disregard was not effective.

There is a strong certainty of conviction in this case without the reference to the exchange regarding inferences of guilt in DWI cases. *See Hawkins*, 135 S.W.3d at 77 (considering certainty of conviction absent misconduct in reviewing trial court's ruling on motion for mistrial). The State presented Aguirre's testimony that Rodriguez caused the penetration of her mouth with his penis by compelling her to perform oral sex through the use and threat of physical violence and by exhibiting a firearm. Rodriguez could not be excluded as the contributor of DNA extracted from Aguirre's oral swab. Snape's testimony confirmed that Rodriguez was in possession of a gun and had pointed it at Aguirre before Snape was locked out of the townhouse. In addition, when the police arrived on the scene, Deputy Riojas observed that Rodriguez was sweaty and only partially dressed and that Aguirre was distraught and wearing only a tank top and thong underwear. And Deputy Fitts opined that,

during his investigation, Aguirre displayed the characteristics of a person traumatized by a significant event.

On this record, we hold that the trial court did not abuse its discretion in denying Rodriguez's motion for mistrial, and we overrule the remaining portion of Rodriguez's second issue.

## Conclusion

We affirm the judgment of the trial court.


Amparo Guerra
Justice

Panel consists of Justices Goodman, Landau, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).